DAVID KAHANANUI, ELIZABETH POOKAPU, AND MARY P. KAWAIMAKA *v.* JAMES H. MAUNAKEA SR., JAMES MAUNAKEA, ELIZABETH, OR ELIKAPEKA MAUNAKEA KAMUKAHI, WILLIE MAUNAKEA, JIM, ALIAS IAMEKA MAUNAKEA, JOSEPH MAUNAKEA, LILIA MAUNAKEA AH TAI, AND W. R. CASTLE, ADMINISTRATOR OF THE ESTATE OF ELIZABETH IPUHAO SNIFFEN, DECEASED.

ERROR TO CIRCUIT JUDGE, FIRST CIRCUIT.

ARGUED MARCH 22, 1910. DECIDED MARCH 24, 1910.

HARTWELL, C.J., PERRY AND DE BOLT, JJ.

DESCENT AND DISTRIBUTION—*the word "children" in statute including grandchildren.*

Under the "General rules of descent," Sec. 2509 R. L., the word

"children" includes grandchildren in the clause providing that "if the intestate be a woman and shall leave no issue nor father nor mother her estate shall descend one-half to her husband and the other half to her brothers and sisters and to the "children" "of any brother or sister by right of representation."

### OPINION OF THE COURT BY HARTWELL, C.J.

At the hearing of the administrator's petition for a decree of final distribution the plaintiffs, being a grandnephew and two grandnieces of the intestate, claimed to be entitled to share equally with the children of the decedent's niece who survived her and had since deceased and assign error in the decree excluding them from taking. The decedent left a husband, whose share of one-half of the estate is not disputed, the question being whether the words in the statute (Sec. 2509 R. L.), "The children of any brother or sister by right of representation," include grandchildren of a sister or brother, the statute upon the subject reading: "If she shall leave no issue, nor father, nor mother, her estate shall descend one-half to her husband and the other half to her brothers and sisters, and to the children of any brother or sister by right of representation." In support of their contention that the statute does not include children of the first generation only the plaintiffs point out that if there were no nieces or nephews but only grandnieces and grandnephews who could not take, there would be no one to take the estate under the paragraph immediately following, reading: "If the intestate shall leave no issue nor father, mother, brother or sister, nor descendants of any deceased brother or sister, the estate shall descend to the intestate's widow, if any; or in case the intestate be a woman, to her husband, if any;" and also that if there were no surviving husband or wife but three grandchildren of a deceased uncle the grandchildren could not take as next of kin under the next provision of the statute: "If the intestate shall leave none of the *said relatives* surviving nor widow nor husband the estate shall

descend in equal shares to the next of kin in equal degree," grandnieces and grandnephews of sisters or brothers being nearer of kin than grandchildren of an uncle and yet not entitled to take unless by the construction of the statute contended for by the plaintiffs. It is further suggested in respect of the statute (Sec. 2519 R. L.): "If the intestate leave no kindred his estate shall escheat to the Territory," that unless the plaintiffs' contention is sustained there would be no inheriting kindred, leaving the estate in an anomalous condition.

The decree was based upon the decision of Chief Justice Judd in *Aihonua* v. *Ahi,* 6 Haw. 410 (1883), in which the defendant's claim as grandson of the decedent's sister was disallowed under the paragraph of the statute now under consideration, but before the amendment of 1898.

The object of the statutes of descent is to prescribe rules for succession of the property of any person dying intestate, which "shall descend to and be divided among his heirs as in this chapter prescribed." Sec. 2507 R. L. The amendment, Ch. 1 S. L. 1872, gave to the wife's father and mother, brothers and sisters the same inheriting rights in her property which the husband's relatives had and added the provision that in case of her leaving no issue, father, mother, brother or sister her estate went one-half to her husband, if any, and one-half to brothers and sisters of her father and mother (uncles and aunts) and to "their children and heirs by right of representation." Such was the statute in 1883 when Chief Justice Judd held that the grandson of a deceased sister of the intestate did not inherit, as the statute does not say "to the children and heirs" of a deceased brother or sister; "if it did, Hiwauli, as the grandson of Hiki's sister, would inherit equally with Napoe. Napoe is one degree nearer Hiki than Hiwauli, and inherits to his exclusion." *Ahionua* v. *Ahi,* 6 Haw. 410, 411. Although there has been no change in the paragraph of the statute under which that decision was made the amending act

of 1898 (Act 47 S. L. 1898) repealed the former amending act of Sec. 1448 C. C. (Ch. 1 S. L. 1872). That section as so amended, in place of the last two paragraphs of Sec. 1448 C. C., after providing for inheritance by the husband and relatives of a woman dying intestate without issue, enacts that "if the intestate" (whether a married woman or man) "shall leave no issue, father, mother, brother or sister, *nor descendants* of any deceased brother or sister" (who would include grand-nephews and grandnieces) the estate shall descend to the intestate's husband or widow, and that "if the intestate shall leave none of the *said relatives* surviving, nor widow nor husband the estate shall descend in equal shares to the next of kin in equal degree." Act 47 does not reenact the last paragraph of Sec. 1448 C. C. which provided that the widow should inherit all of the husband's estate if he "leave no kindred but a widow" and that the husband should inherit all his wife's estate if she "leave no kindred but her husband."

It may as well be inferred from the statute that the intention of the legislature was that if husband or wife should not survive, the next of kin should take in the absence of issue, father, mother, brother, sister, nephews or nieces—they being the relatives previously enumerated—as that only upon failure of those relatives and of grandchildren of brothers and sisters the next of kin should take; but it is not so readily to be inferred that a widow or husband could take one-half of the estate if there were nephews and nieces but could take nothing if there were only grandnieces and grandnephews. In order to avoid such an irrational disposition of an intestate's property it would be necessary to consider that the word "descendants," which includes grandchildren as well as children, is used coterminously with "children" and is perhaps so used for no other reason than to avoid the more cumbrous expression of "grandchildren of a brother or sister." The word "descendants" would not naturally be used for "children" in the meaning of offspring

and its use in the amending act of 1898 gives the impression that brothers' and sisters' children were intended to include any of their lineal descendants, taking the place of uncles and aunts and their children "and heirs" who took before the act of 1898, but who now take if there are no nephews or nieces or their lineal descendants, taking then as next of kin.   Either the "descendants" who hold up the descent must include children's children or else the statute, expressly providing for rules for the descent of an intestate's property, would be futile for the accomplishment of that object and it would be absurd to suppose that such effect was intended.

There are numerous cases under wills "in which it has been held that the testator, by using the words 'child' and 'issue' indiscriminately, has shown his intention of using the former term in the sense of 'issue' so as to entitle grandchildren to take under it."   2 Williams on Executors, 1183, and cases cited n. f., especially *Prowitt* v. *Rodman,* 37 N. Y. 42 ; and see *Bowker* v. *Bowker,* 148 Mass. 198, 203, and cases there cited.

There is a class of cases requiring that if any child of an intestate shall have been advanced by him in his lifetime an amount equal to the share allotted to the other children such child shall have no share of the estate or only such share as when added to the amount advanced shall equalize the shares of the other children.   As shown in *Eshleman's Appeal,* 74 Pa. 42, the word "child" under such act, as well as under English decisions upon an early statute to the same effect, is held "to extend to a grandchild," so that "grandchildren and great grandchildren are all children and come within that to certain purposes."   And see under a similar statute in *Beebe* v. *Estabrook,* 79 N. Y. 246, 250, "the word *children* in the section quoted is used to designate all the descendants of the intestate entitled to share in the distribution."   The reason for taking "children" to include "descendants" in cases of wills is well expressed in *Mowatt* v. *Carow,* 7 Paige's Ch. 328, 333. "Where

for instance the will would otherwise remain inoperative and it is necessary to extend the meaning beyond the natural import of the word in order to effectuate the object and apparent intention of the testator, as in *Wilde's case* (6 Coke's Rep. 16.) or where the testator has clearly shown by other words, such as issue or descendants, used promiscuously with the term children, that he did not intend the latter to be understood merely in its natural sense but in the more comprehensive sense of issue or descendants generally."

A case which appears to be more directly in point than any others of which we are informed is *Walton v. Cotton,* 19 How. 355, under an act of 1832 giving pensions to revolutionary soldiers, which in case of the death of any person embraced by the act were directed to be made to his widow, "or if he leave no widow to his children." The question was presented whether the statute would extend a bounty to grandchildren or restrict it to the children living at the time of the soldier's death. The court held that "the word 'children' in the acts embrace the grandchildren of the deceased pensioner whether their parents die before or after his decease," basing this conclusion upon the fact that if there were "no widow or children, but grandchildren, the pension cannot be drawn from the Treasury. This would seem to stop short of carrying out the humane motive of Congress. They have not named grandchildren in the acts; but they are included in the equity of the statutes. And the argument that the pension is a gratuity, and was intended to be personal, will apply as well to grandchildren as to children."

Considering the object and context of the present statute and its amendment in 1898, the rules for construction expressed in Secs. 9, 10, 11, 12 and 13 R. L., and the absurd results which otherwise would follow we are clearly of the opinion that the "children" intended include "grandchildren" in this case, so that the plaintiffs are entitled to a share of the intestate's estate as claimed by them.

Decree reversed, case remanded for appropriate proceedings.

*P. L. Weaver* (*Magoon & Weaver* on the brief) for plaintiffs.

*W. C. Achi* for defendants.

*D. L. Withington,* for the administrator, submitted the case without argument.