Syllabus.

# IN THE MATTER OF THE ESTATE OF JAMES OSWALD LUTTED, DECEASED.

## No. 873.

APPEAL FROM CIRCUIT JUDGE, FIRST CIRCUIT.

HON. C. W. ASHFORD, JUDGE.

SUBMITTED OCTOBER 2, 1915.        DECIDED OCTOBER 18, 1915.

ROBERTSON, C.J., WATSON AND QUARLES, JJ.

EXECUTORS AND ADMINISTRATORS.

L, on the 26th day of July, 1913, devised and bequeathed specific real and personal property to B, and appointed her sole executrix "as respects this property only." In August, 1913, he made another testamentary paper "ratifying and confirming" all that was done by the prior instrument, in which he devised and bequeathed to S all personal, real and mixed property of which he died possessed, either in the Territory of Hawaii or elsewhere, "except as willed and bequeathed as aforesaid," and appointed said S executrix of said "last will and testament, except as aforesaid." Held that the two instruments were properly admitted to probate as the will and codicil of the testator; that the second appointment (or attempted appointment) of an executrix was no revocation of the first, and that S was not entitled to receive the appointment as sole executrix.

Same—*probate procedure.*

Under our system of probate procedure, as prescribed by statute, the appointment of different executors in this Territory, each having separate and distinct duties with respect to property of an estate lying in this Territory, is not permissible.

Same—*appointment of administrator with will annexed.*

Under the facts in this case, held that the appointment of a disinterested person as administrator with the will annexed was proper,—the question of the right of priority in the matter of such administration not being raised or passed upon by the court.

OPINION OF THE COURT BY WATSON, J.

This is an appeal from an order made by a circuit judge, sitting at probate, granting letters of administration with the will annexed. James Oswald Lutted, a resident of the city and county of Honolulu, died in Honolulu on or about May 4, 1915, leaving two written instruments, dated July 26 and August 2, 1913, respectively, which, together, disposed of his entire estate. In the former the testator devised and bequeathed to one Jennie Blythe Brown "outright and free" certain Kapaa homestead lots, together with the buildings thereon, growing crops, live stock, tools, machinery, and contracts and agreements in connection with the same, and appointed said Jennie Blythe Brown sole executrix without bond "as respects this property only." In the latter, the testator, "ratifying and confirming all that was done by another instrument and will by me made and executed on the twenty-sixth day of July, Anno Domini, 1913," devised and bequeathed unto his daughter, Gertrude Marie Sledge, all personal, real and mixed property of which he died possessed, either in the Territory of Hawaii or elsewhere, "except as willed and bequeathed as aforesaid," and appointed the said Gertrude Marie Sledge executrix of said "last will and testament, except as aforesaid." The two instruments, each of which was duly attested by two subscribing witnesses, the first by P. H. Burnette and A. T. R. Jackson, as witnesses, and the second by said P. H. Burnette and Gillis Goodman, as witnesses, read as follows, omitting in each the signature of the testator and the attestation clause:

The first:

"Be it remembered, I, James Oswald Lutted, of the City and County of Honolulu, Territory of Hawaii, being now 69 years of age past, and of sound and disposing mind, memory and understanding, and a widower, do make and

declare this my last will and testament, hereby revoking any and all other wills or testaments by me heretofore made in so far as the property hereby bequeathed is concerned.

"First: I direct that my just debts and funeral expenses be paid first.

"Second: In consideration of tender and loving services rendered me by (Mrs.) Jennie Blythe Brown, (widow), of Honolulu, Territory of Hawaii, during the past year and throughout my severe illness, which were gratuitously and sisterly rendered, I do hereby will and bequeath unto her the said Jennie Blythe Brown, widow, outright and free the following real and personal property, to wit: All of Lots 140, 144 and 145 of Kapaa Homestead Lots, at Kapaa, Kauai, Territory of Hawaii, together with all buildings thereon, growing crops, live stock, tools, machinery and contracts and agreements, if any there be in connection with the same.

"Third: I hereby appoint my beloved friend (Mrs.) Jennie Blythe Brown, widow, aforesaid, my sole executrix, without bond, as respects this property only.

"In witness whereof, I hereunto set my hand and seal, at Honolulu, aforesaid, this twenty-sixth day of July, Anno Domini, 1913."

The second:

"Be it remembered, I, James Oswald Lutted, of Honolulu, Territory of Hawaii, widower, age 69 years past, being of sound and disposing mind, memory and understanding, do make and declare this my last will and testament, but, hereby ratifying and confirming all that was done by another instrument a will, by me made and executed on the twenty-sixth day of July, Anno Domini, 1913, whereby I did will and bequeath unto Jennie Blythe Brown, widow, of Honolulu aforesaid, all of Lots 140, 144 and 145 of Kapaa Homestead Lots, at Kapaa, Kauai, Territory of Hawaii, together with all improvements thereon, the growing crops, live stock, machinery, tools, etc.

"I will and bequeath to my beloved daughter Gertrude Marie Sledge, the wife of John Sledge of Spokane, State of Washington, being my only heir-at-law, all personal, real

and mixed property that I may die possessed of either in the Territory of Hawaii or elsewhere, except as willed and bequeathed as aforesaid, including shares in corporations, cash in hand and on deposit in banks, personal jewelry and other effects.

"I do hereby appoint Gertrude Marie Sledge, my daughter aforesaid, my sole executrix of this my last will and testament, except as aforesaid, and she to serve without bond.

"In witness whereof, I, James Oswald Lutted, the testator, have to this my final will, written on this one sheet, set my hand and seal this second day of August, Anno Domini, 1913."

After the death of the testator the appellant (Mrs. Gertrude Marie Sledge) presented the two instruments for probate with a petition that she be appointed sole executrix of the estate. The court admitted the two instruments to probate as the will and codicil of the testator and granted letters of administration with the will annexed to one E. A. C. Long, a disinterested person, and denied the appellant's petition for letters testamentary. From this order the present appeal is taken, the principal contention of the appellant being that her nomination as executrix by the instrument dated August 2, 1914, must be considered by the court "as controlling, and constituting legally a revocation of the earlier appointment of Mrs. Brown." The complete answer to this contention is, that in the second instrument, which was treated by the circuit judge (we think properly) as a codicil to the will of July 26, 1913, the testator expressly ratifies and confirms all that was done by him in the previous instrument (the will made by him on July 26, 1913), and the appointment of appellant as executrix is specifically limited so as not to interfere with the appointment of (Mrs.) Jennie Blythe Brown as executrix of the property devised to her. The phraseology of the documents makes this point absolutely clear. The will (dated July 26, 1913,) provides, *inter alia*:

"I hereby appoint my beloved friend (Mrs.) Jennie Blythe Brown, widow, aforesaid, my sole executrix, without bond, as respects this property only."

The second instrument (dated August 2, 1913,) provides, *inter alia:*

"Be it remembered, I, James Oswald Lutted, of Honolulu, Territory of Hawaii, widower, age 69 years past, being of sound and disposing mind, memory and understanding, do make and declare this my last will and testament, but, *hereby ratifying and confirming all that was done by another instrument a will, by me made and executed on the twenty-sixth day of July, Anno Domini, 1913,* * * *

"I do hereby appoint Gertrude Marie Sledge, my daughter aforesaid, my sole executrix of this my last will and testament, except as aforesaid, and she to serve without bond."

There is no conflict or inconsistency between the provisions of the two instruments, either in the matter of the disposition of the testator's property or in the nomination of executrices, and we are of the opinion that there is no merit in this first contention of appellant's, that her appointment in the instrument dated August 2 operated as a revocation of the appointment of Mrs. Brown made in the earlier instrument. We think the intention of the testator, to be gathered from the two instruments, is clear, that he desired Mrs. Brown to be appointed the executrix of that portion of the estate devised and bequeathed to her and Mrs. Sledge to be appointed executrix of the entire residuary estate, devised and bequeathed to her by the instrument of date August 2, 1913. Appellant was not entitled to receive the appointment as sole executrix, as prayed for by her.

Secondly, it is contended by the appellant that should the court hold she was not entitled to receive letters testamentary as sole executrix, the court below should have appointed two executrices (herself and Mrs. Jennie Blythe Brown), "each having separate and exclusive control over

that portion of the property of the deceased, within the jurisdiction of the court, intrusted to her under the will." On that point the circuit judge, in his written decision on petition for probate, said:

"The net result of the two documents, as regards nomination of some one to execute the will, is that there are two such nominations, but they are separate, and not joint. That is, one executrix so nominated is expressly confined to the execution of the will so far as it relates to certain real estate thereby devised; and the other is likewise limited in the scope of her duties, by the exception last above discussed. While there may be any number of joint executors, or executrices, and while there may even be separate executors, to act in different countries, or even in different States of the Union, I have yet to find a case where two or more such executive officers have been appointed under one will, and with limited and distinct powers and duties, with respect to property of an estate lying within one jurisdiction.

"It is therefore my opinion that the two instruments so executed by Lutted neutralize each other with respect to the appointment of an executrix, and that neither of the ladies named can be appointed executrix of the will and codicil, without doing violence to very expressly stated wishes of the testator. In this posture of events, it becomes the duty of the court to appoint an administrator-with-the-will annexed, and Mr. Elia A. C. Long will, (unless some good reason to the contrary be shown,) be so appointed, and will receive letters of administration with the will annexed, upon filing an approved bond in the sum of five thousand dollars ($5,000.00)."

This decision of the circuit judge was filed on July 10, 1915, and thereafter, on July 13, 1915, an order admitting the two instruments to probate was duly made and entered, wherein it was further ordered "that letters of administration with the will annexed issue to Elia A. C. Long in accordance with the decision on petition for probate," hereinabove quoted from. From the record before us it does not appear that the appointment of Long was objected

to, or that the appellant, or any other person, claimed the right to administer; and no question is raised as to the applicability of section 2490, R. L., 1915, touching the right of priority in the matter of the appointment of an administrator.

After careful consideration we are of the opinion that the views expressed by the circuit judge are correct,—that different executors may not be appointed as to different parts of a testator's estate in this jurisdiction. This view is in seeming conflict with certain general expressions found in the books, wherein it is stated, as in *Hunter* v. *Bryson,* 25 Am. Dec. 313, 316 (cited in appellant's brief), that:

"A testator may appoint different executors, in different countries, in which his effects may lie; or different executors as to different parts of his estate in the same country." See also 18 Cyc., p. 74, n. 6.

From an examination of the case of *Hunter* v. *Bryson, supra,* and the cases referred to in Cyc., n. 6, *supra,* it appears that all were cases of administration in separate jurisdictions, and in the *Bryson* case the statement of the court above quoted, with respect to the appointment of different executors as to different parts of the estate in the same country, was *dicta.* In the case of *Geaves* v. *Price,* 3 Swab. and T. 71, it appears from the syllabus that the testator, "D., on the 3rd of January, 1853, devised and bequeathed all his real and personal estate to P., and appointed him 'sole executor of this my will.' In March, 1862, by a paper purporting to be his last will, he devised and bequeathed two houses as described, and their appurtenances to G, and made G. 'sole executor of this my will.' " Under the facts stated the court held that the two executors were jointly entitled to probate of both papers. In the case at bar it is evident from a reading of the two instruments that the appointment of Mrs. Sledge and Mrs.

Brown as joint executrices would not effectuate the intention of the testator, and we are of the opinion that the probate court would not have been justified in decreeing that they take probate jointly. We are further of the opinion that the appointment of different executors in this Territory for different parts of a testator's estate situate in this jurisdiction would be inconsistent with such statutory provisions as are in force here relating to probate procedure and providing for notice to creditors, the filing and allowance of claims, the sale of property for the payment of debts, etc. (Chap. 141, R.L. 1915). It is conceded by counsel for both parties that great confusion would result in this case from the appointment of the two executrices, and counsel for appellant state, "We certainly have been unable to find any authorities sustaining such an absurd situation." In Redfield on the Law of Wills, Part II., p. 65, we find the following statement which is quoted *in extenso* by counsel for both parties, seemingly with approval:

"The testator may also commit the execution of his will in different countries to different executors; or the duties may be divided among different executors with reference to the subject matter, it has been said, but Lord Hardwicke expresses an opinion that such an appointment would be absurd, because executors must act jointly and each have authority as to the whole estate, 'which cannot be divided into distinct and separate powers.' And we think the American practice confirms the views of his lordship thus expressed," citing *Owen* v. *Owen,* 1 Atk. 494.

We think that under our system of probate procedure, as prescribed by statute, the appointment of different executors in this Territory, each having separate and distinct powers and duties with respect to property of an estate lying in this jurisdiction, is not permissible. Our conclusion is that the appointment of an administrator with the will annexed was, under the circumstances, proper,

and no question being raised as to any supposed right of priority in the matter of such appointment we feel that we should not disturb the order made by the circuit judge, in the exercise of his undoubted jurisdiction, appointing Mr. Long.

The order is affirmed.

*E. C. Peters* for appellant.

*Thompson, Milverton & Cathcart* for appellee.

---

DONG YOU, ET AL. *v.* WING HING COMPANY, LIMITED.

No. 839.

MOTION FOR SUMMARY JUDGMENT.

ARGUED OCTOBER 25, 1915.                    DECIDED OCTOBER 26, 1915.

ROBERTSON, C.J., WATSON AND QUARLES, JJ.

*Per curiam.* December 5, 1914, the plaintiffs recovered a judgment against the defendant for $1,901.41 and $184.09 costs. From said judgment defendant sued out a writ of error in this court. The case having been argued and submitted, the opinion of this court affirming the said judgment was filed July 12, 1915, and in accordance therewith the judgment of this court affirming the judgment of the circuit court was entered on the 27th day of July, 1915, and notice of said judgment was regularly transmitted to the judge

of the circuit court on the same day. September 29, 1915, the plaintiffs filed their motion for judgment upon the bond given by the defendant (both against the principal and sureties) to procure the writ of error out of this court for the amount of said judgment and costs, less $1,500 paid thereon after the affirmance of said judgment, and this motion has been argued and submitted and is now before us for decision. The plaintiffs base their right to summary judgment upon said bond against the principal and sureties by reason of the provisions of section 2544 R.L., wherein it is provided that "Summary judgment may be rendered in any proper case * · * * against the principal or principals and surety or sureties on any bond for costs or appeal bond, by either the appellate court or the trial court as the case may be," etc. This statute was enacted in 1907 (see Act 63, S. L. 1907), the title reading: "Relating to Costs of Court." Section 2538 R.L., under the title "Appeals, Exceptions, Error," provides that "Whenever any person for whose benefit such bond has been filed shall be entitled to a recovery thereunder, an action may be brought in the appropriate court," etc. Section 2544 R.L., originally enacted under the said title, is found in the Revised Laws in chapter 143, entitled "Costs." We construe section 2544 as providing a remedy upon bonds for costs only. We are of the opinion that the legislature did not intend to provide for a summary judgment against the sureties in a bond of the kind before us, but that an action should be brought thereon wherein the sureties might avail themselves of any defense which might exist. This construction gives to section 2538 the full effect which the legislature apparently intended that it should have, and gives to section 2544 that effect which the legislature evidently intended it should have. The motion of the plaintiffs for summary judgment against the principal and sureties is therefore denied. If the plaintiffs were entitled to

the relief sought by this motion the circuit court would be the appropriate court in which to make the motion.

Motion denied with costs of motion to the defendant.

*R. J. O'Brien* for the motion.

*J. Lightfoot* contra.